1
2
3
4
5
6
7
8                    **UNITED STATES DISTRICT COURT**

9                    **SOUTHERN DISTRICT OF CALIFORNIA**

10   ILIA DERUM, on behalf of herself          CASE NO. 14-cv-1921 JM (JLB)
     and all others similarly situated,
11                                             ORDER DENYING SAKS &
                                  Plaintiff,   COMPANY'S MOTION FOR
12      vs.                                    SUMMARY JUDGMENT

13   SAKS & COMPANY, a New York
     corporation,
14
                                  Defendant.
15

16          Before the court is Defendant Saks & Company's ("Saks's") motion for

17   summary judgment, (Doc. No. 15), and its related request for judicial notice, (Doc.

18   No. 15-3).  The matters were fully briefed and were found suitable for resolution

19   without oral argument pursuant to Local Civil Rule 7.1.d.1.  For the reasons set

20   forth below, the court denies Saks's motion for summary judgment and its request

21   for judicial notice.

22                              **BACKGROUND**

23          In this putative class action, Plaintiff Ilia Derum asserts that Saks violated

24   California Labor Code § 226(a), which requires employers to provide accurate

25   itemized wage statements that include, among other things, the inclusive dates of

26   the relevant pay period.

27          Plaintiff was a sales associate for Saks at a Saks Off Fifth store for about

28   seven weeks, beginning on May 6, 2014.  (Doc. No. 15-7 ("Joint Stip.") ¶ 1;

                                          1

Doc. No.15-6 ("Rodriguez Decl.") ¶ 3.)  At the beginning of her employment, she

received, reviewed, and kept a copy of Saks's "Associates Handbook."  (Joint Stip.

¶ 2.)  The handbook stated:  "Hourly Associates are paid weekly and checks are

dated on Friday for the previous pay period.  The pay period runs Sunday to

Saturday."  (Rodriguez Decl., Exh. B.)  The handbook provided instructions for

how to sign up for Direct Deposit, and it stated:  "If Direct Deposit is not elected,

live payroll checks are distributed via U.S. Mail to all Associates.  2008-current

payroll checks can be viewed in Employee Self Service (ESS) via the S$^4$ Portal at:

http://associates.saksincorporated.com."  (Id.)  It stated further:

> There are two sections to paychecks:
>
> 1.  The check.
>
> 2.  A statement of your earnings for the pay period, as well as deductions that you have authorized and/or the government requires, are itemized.

(Id.)

Plaintiff was informed that hard-copy paychecks would include detachable

wage statements, and she chose to receive her checks by mail rather than by direct

deposit.  (Doc. No. 19-2 ("Pl.'s Decl.") ¶ 2; Doc. No. 15-5 ("Lowry Decl.") ¶ 8.)

Accordingly, she was issued a paper paycheck every Friday from May 16, 2014,

to June 20, 2014.  (Joint Stip. ¶ 3.)  Attached to each paycheck was an itemized pay

stub, which listed, among other things, the number of hours worked, gross earnings,

itemized withholdings for taxes and other deductions, net pay, and the end date for

the pay period.  (Joint Stip. ¶ 3; Pl.'s Decl., Exh. 1.)  The parties agree, however,

that the hard-copy pay stubs did not include the beginning date of the pay period.

(Joint Stip. ¶ 3; Pl.'s Decl., Exh. 1.)

For each pay period, Saks also uploaded to its ESS website an electronic

wage statement.  (Lowry Decl. ¶ 9 & Exh. A.)  Unlike the pay stubs, the electronic

statements included the beginning date of the pay period.  (Lowry Decl., Exh A.)

Because of an error in Plaintiff's form W-4, all of her wages were being

withheld as taxes, so the net pay on her first four paychecks was listed as "00." (Pl.'s Decl. ¶¶ 9, 11 & Exh. 1.)  What happened then is the matter of some dispute.

According to Maria Rodriguez, the store's Selling and Service Manager, when Plaintiff contacted her about the problem with her paychecks, Rodriguez sat down with Plaintiff and used Plaintiff's log-in and password to access the ESS system and review Plaintiff's electronic wage statements with her.  (Rodriguez Decl. ¶¶ 1, 7.)  Rodriguez further states in her declaration that Plaintiff received a copy of the Associates Handbook, and that a flyer posted in the employee break room informed employees as to what their identification and passwords were to access the ESS website.  (Id. ¶ 4 & Exh. A.)

According to Plaintiff, when she contacted Rodriguez about the problem with her paychecks, Rodriguez logged into the system, reviewed Plaintiff's W-4 form without Plaintiff's help and without showing Plaintiff her electronic wage statements, and printed a new blank W-4 form for her to fill out.  (Pl.'s Decl. ¶ 11.) She does not remember anyone at Saks directing or encouraging her to review her paychecks on ESS, and she does not recall anyone telling her that the information contained in her pay stubs was in any way different from the information contained in the electronic wage statements on ESS.  (Id. ¶ 8.)  She believed that her hard-copy pay stubs were identical to the ESS statements, and no one told her anything to make her think otherwise.  (Id.)  She also does not recall anyone encouraging her to review the flyer and does not remember seeing it in the employee breakroom or anywhere else.  (Pl.'s Decl. ¶ 7.)

The parties agree, however, that Plaintiff never tried to access the ESS system to retrieve her electronic wage statements.  (Joint Stip. ¶ 4.)

Plaintiff initiated this putative class action in San Diego Superior Court on July 15, 2014, alleging that Saks failed to provide proper wage statements in violation of California Labor Code § 226(a) by failing to include the pay-period start date on her pay stubs.  (Doc. No. 1, Exh. 3.)  Saks removed the case to this

1    court on August 15, 2014, pursuant to the Class Action Fairness Act, 28 U.S.C. §

2    1332(d)(2).  (Doc. No. 1.)  On October 24, 2014, with leave of court, Plaintiff filed

3    the operative first amended complaint, which added a cause of action for penalties

4    under the Private Attorneys General Act of 2004 ("PAGA"), California Labor Code

5    § 2699, based on the alleged violation of California Labor Code § 226(a).  (Doc.

6    No. 11.)  Plaintiff seeks to litigate on behalf of all persons employed in California

7    by Saks at any time since July 14, 2013.  (Id. ¶ 9.)

8           After meeting and conferring, the parties agreed that there is a threshold issue

9    that should be resolved by an early summary judgment motion before they litigate

10   the issue of class certification, namely, whether Saks violated California Labor

11   Code § 226 by providing Plaintiff with a pay stub attached to her paychecks that

12   did not include the beginning pay-period date, when it also issued electronic wage

13   statements that did contain the beginning pay-period date.  (Joint Stip. at 2.)

14          On December 19, 2014, Saks filed the instant motion for summary judgment,

15   (Doc. No. 15), and a related request for judicial notice, (Doc. No. 15-3).  Plaintiff

16   filed an opposition on February 9, 2015, (Doc. No. 19), and Saks replied on

17   February 16, 2015, (Doc. No. 20).

18                              **DISCUSSION**

19   **A.    Request for Judicial Notice**

20          Saks asks the court to take judicial notice of two items from the docket for

21   Peabody v. Time Warner Cable, Inc., No. CV 09-6485-AG (RNBx), which was

22   litigated in the United States District Court for the Central District of California:

23   (1) the plaintiff's opposition to the defendant's motion for summary judgment,

24   dated August 9, 2010; and (2) the court's order granting summary judgment for

25   the defendant, dated November 1, 2010.  (Doc. No. 15-3.)  The documents are not

26   available on the commercial legal databases, but are attached to Saks's request

27   for judicial notice.  (Id, Exhs. A & B.)  Saks contends that judicial notice of these

28   / / /

1  documents is proper because they are court filings, publicly accessible on the

2  Central District's CM/ECF website, and not subject to reasonable dispute.  (Id. at 2.)

3      Plaintiff opposes Saks's request.  (Doc. No. 19 at 8 n.2.)  She asserts that the

4  court should decline to take notice of the documents because Saks failed to show

5  why they are appropriate for judicial notice or relevant to this case.  (Id.)  She

6  argues that "[t]he only apparent purpose of Saks' request is to imbue the documents

7  with precedential value they neither have nor can acquire."  (Id.)

8      Rule 201 is a method of establishing facts that are not reasonably subject

9  to dispute, not legal principles.  See Fed. R. Evid. 201(a) & advisory committee

10  note to subdivision (a) (regarding the difference between adjudicative facts and

11  legislative facts).  Here, Saks asks the court to consider Peabody for the legal

12  principle it represents, not to establish a fact at issue in this case.  Although the

13  order was not published in the commercial legal databases, there is nothing special,

14  in precedential terms, about the orders that are selected (or not selected) for

15  inclusion in the commercial databases, and it is well established that courts may

16  consider the legal reasoning and conclusions of other federal courts without resort

17  to Rule 201.  See McVey v. McVey, 26 F. Supp. 3d 980, 984–85 (C.D. Cal. 2014)

18  (collecting cases).  The court, therefore, denies Saks's request for judicial notice,

19  but will consider the documents for whatever value they may have as non-binding

20  precedent.

21  **B.    Motion for Summary Judgment**

22      **1.    Legal Standard**

23      "The court shall grant summary judgment if the movant shows that there is

24  no genuine dispute as to any material fact and the movant is entitled to judgment

25  as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute of fact is material if it "might

26  affect the outcome of the suit under the governing law."  Anderson v. Liberty

27  Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute of fact is genuine "if the evidence

28  is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party, and must draw all justifiable inferences in the nonmovant's favor.  See Johnson v. Poway Unified Sch. Dist., 658 F.3d 954, 960 (9th Cir. 2011).

### 2.    Inadequate Wage-Statement Claim

Plaintiff's first cause of action is for inadequate wage statements under California Labor Code § 226(a), which requires employers to provide accurate itemized wage statements to employees that provide nine pieces of information. Section 226(a) reads in relevant part:

> Every employer shall, semimonthly or at the time of each payment of wages, furnish each of his or her employees, either as a detachable part of the check, draft, or voucher paying the employee's wages, or separately when wages are paid by personal check or cash, an accurate itemized statement in writing showing (1) gross wages earned, (2) total hours worked by the employee [except for salaried employees], (3) the number of piece-rate units earned [if applicable], (4) all deductions . . . , (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer . . . , and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked.

Cal. Lab. Code § 226(a).

Section 226(e) provides a remedy for an employee injured by an employer's failure to comply with these requirements.  It provides:

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

Cal. Lab. Code § 226(e).

Thus, a claim for damages under § 226(e) requires proof of three elements: (1) a violation of § 226(a); (2) that is "knowing and intentional"; and (3) a resulting injury.  See Willner v. Manpower Inc., 35 F. Supp. 3d 1116, 1128 (N.D. Cal. 2014).

1   Saks contends that it is entitled to summary judgment in its favor because Plaintiff
2   cannot establish any of these elements.  The court takes each of them in turn.

3                    **a.     Violation of § 226(a)**

4       Plaintiff asserts that Saks violated § 226(a) because the pay stubs attached
5   to her paychecks lacked the beginning date of the pay period.  She cites three
6   cases that, indeed, held that wage statements violated § 226(a)(6) because they did
7   not include the beginning date of each pay period.  See Willner, 35 F. Supp. 3d at
8   1129 ("A failure to include the start date of the pay period in a statement constitutes
9   a violation of Section 226(a)(6)."); McKenzie v. Fed. Express Corp., 765 F. Supp.
10  2d 1222, 1229 (C.D. Cal. 2011) ("FedEx violated Labor Code Section 226(a)(6) by
11  failing to include the beginning date for the pay period in its wage statements until
12  December of 2009."); Lopez v. G.A.T. Airline Ground Support, Inc., 2010 WL
13  2839417, at *6 (S.D. Cal. 2010) ("It is . . . undisputed that GAT's wage statements
14  indicate only the end date for each pay period, and do not list the beginning date.").

15      Saks does not dispute that the itemized pay stubs Plaintiff received did not
16  include the beginning date of each pay period.  (Joint Stip. ¶ 3.)  However, it points
17  out that none of Plaintiff's cases involved the situation here, where the employer
18  additionally provided a compliant wage statement.  It asserts that the pay stubs
19  Plaintiff received were merely in addition to the electronic wage statements, which
20  contained all of the required information and were readily accessible to Plaintiff
21  through the company's ESS website.  (Doc. No. 15-1 at 5–8.)

22      As to the law, Saks contends that it is well settled that employers can satisfy
23  their obligations under § 226(a) by furnishing electronic wage statements, and that
24  "multiple district courts in California have agreed that an employer satisfies Labor
25  Code § 226 so long as it provides a compliant wage statement, even if the actual
26  paystubs attached to its paychecks did not contain all the information required by
27  Labor Code § 226."  (Id. at 6–7.)
28  / / /

1    Saks is correct that an electronic wage statement can satisfy an employer's
2 obligations under § 226(a), at least under some circumstances.  In 2006 the
3 California Department of Labor Standards Enforcement ("DLSE") issued an opinion
4 letter approving a plan to implement an electronic wage-statement system, subject
5 to certain conditions.  See DLSE Opinion Letter No. 2006.07.06 (July 6, 2006),
6 available at http://www.dir.ca.gov/dlse/opinions/2006-07-06.pdf.

7    Saks is also correct that employers can satisfy § 226(a) by providing a wage
8 statement on a separate piece of paper that is not attached to the paycheck as a
9 detachable stub.  In Ruelas v. Costco Wholesale Corp., 2014 WL 4421572 (N.D.
10 Cal. Sept. 8, 2014), the plaintiff asserted that Costco violated § 226(a) because the
11 detachable portion of his paycheck did not include his name or the start date of the
12 pay period.  See id. at *2.  The court dismissed the claim because it was undisputed
13 that the plaintiff had received a compliant itemized wage statement, which was
14 stapled to the paycheck.  See id.  The court relied on the DLSE opinion letter, which
15 "confirmed that Section 226(a)'s purpose is to allow the continued use of detachable
16 pay stubs but does not require them."  Id. at *2 & n.28.

17    But it is not clear that providing an electronic wage statement satisfies
18 § 226(a) when, as in this case, an employee has chosen to be paid by hard-copy
19 check.

20    The beginning point of this analysis is the statute, which is silent about
21 electronic wage statements.  As noted above, it requires employees to

22    *at the time of each payment of wages*, furnish each of his or her
23    employees, either as a detachable part of the check, draft, or voucher
      paying the employee's wages, or separately when wages are paid by
      personal check or cash, an accurate itemized statement *in writing* . . . .
24

25 Cal. Lab. Code § 226(a) (emphasis added).  A plain reading of this language
26 suggests that a written statement must be supplied together with a paper paycheck,
27 either as a stub or a separate piece of paper.  But the language does not clearly
28 foreclose Saks's position either.

8

The primary California authority on electronic wage statements appears to be the DLSE opinion letter mentioned earlier. It approves the use of electronic wage statements, but only so long as employees retain the right to elect to receive hard-copy statements. The letter discusses the purpose of § 226(a):

> The purpose of the wage statement requirement is to provide transparency as to the calculation of wages. A complying wage statement accurately reports most of the information necessary for an employee to verify if he or she is being properly paid in accordance with the law and that all deductions from wages are proper. Section 226(a) makes it possible for an employee to retain a copy of his/her own pay records which are not subject to alteration.

Id. at 2 (footnote omitted). It explains that an electronic statement can qualify as a statement in writing because California Labor Code § 8 defines a writing as "any form of recorded message capable of comprehension by ordinary visual means." Id. (internal quotation marks omitted). Although the reference to "detachable part of the check" could be read to always require hard-copy, it says, "in the context of the entire subsection it appears to allow for the continued use of the convenient and traditional 'pay stub' alternative to a separate statement in writing." Id. It concludes that electronic wage statements are permissible, but only under certain circumstances:

> The apparent intent of both forms of wage statements described in Section 226(a) is to allow employees to maintain their own records of wages earned, deductions, and pay received. The Division in recent years has sought to harmonize the "detachable part of the check" provision and the "accurate itemized statement in writing" provision of Labor Code section 226(a) by allowing for electronic wage statements *so long as each employee retains the right to elect to receive a written paper stub or record* and that those who are provided with electronic wage statements retain the ability to easily access the information and convert the electronic statements into hard copies at no expense to the employee.

Id. at 2–3 (emphasis added).

Although the letter is not binding authority, it appears to be the primary state-law authority, and it indicates that when an employee has chosen to receive a written pay stub or record, the employee is entitled to one that satisfies § 226(a). Saks does not address the letter or its limitations on electronic statements, although

1    the letter was the basis of the relevant holdings in two of Saks's cases.  See Ruelas,

2    2014 WL 4421527, at * 2 & n.28; Apodaca v. Costco Wholesale Corp., 2014 WL

3    2533427, at *2 (C.D. Cal. June 5, 2014).

4         Saks relies on Peabody v. Time Warner Cable, Inc., No. CV 09-6485-AG

5    (RNBx) (C.D. Cal. Nov. 1, 2010),[1] for the proposition that an employer does not

6    violate § 226(a) when it provides a noncompliant pay stub, so long as it provides

7    a compliant electronic statement.  The court in Peabody indeed granted summary

8    judgment on a § 226(a) claim regarding a defective pay stub because the online

9    wage statements contained the missing information.  See id. at 7.  But the one-

10   sentence analysis is unsupported by any reasoning or legal authority,[2] and it is not

11   clear what the facts were.  Hence, Peabody's value as persuasive authority is

12   minimal at best.

13        The only other case this court is aware of that involved both a paper stub

14   and an online wage statement appears to have analyzed the stub and the electronic

15   statement separately:

16   _____

17        [1]  This unpublished order was the subject of Saks's request for judicial notice.
18   As discussed earlier, it is not available on the commercial legal databases.

19        [2]  The entire discussion of the § 226 claim in Peabody reads as follows:

20        Plaintiff argues that her wage statements were defective under
     California Labor Code § 226 because they failed to list her hours
21   worked and the name of her employer.  (Opposition at 23:6–13.)

22        There is no genuine issue of fact regarding the wage statements.
     Under § 226(a), Defendant need not list hours worked by Plaintiff
23   because she was a salaried employee and she was exempt from
     overtime pay.  And Plaintiff's online wage statements identified
24   Time Warner Entertainment as her employer.  (Marquez Decl., Ex. A,
     Dkt. #24-3.)

25        Defendant's Motion for Summary Judgment is GRANTED as to this
26   claim.

27   Peabody, No. CV 09-6485-AG (RNBx), at 7.

28

1   The trial court stated, "Clearly, this pay stub, which plaintiff says is
2   typical, does not comply with Labor Code section 226, and Sears does
    not argue that it does." The trial court determined that Sears' electronic
3   pay stubs are also deficient.

4   Ortega v. Sears, Roebuck & Co., 2011 WL 1991957, at *4 (Cal. Ct. App. May 24,

5   2011) (bracket omitted).  But the decision addressed class certification, and, like

6   Peabody, it offers no sign of the reason for that approach.[3]

7   In this case, Plaintiff elected to receive a hard-copy paycheck.  The handbook

8   she was given stated that live paychecks would be accompanied by a statement of

9   earnings, and the stubs she received appear to be just that, except that they do not

10  list the beginning date of the pay period, thus failing to comply with § 226(a)(6).

11  And, according to Plaintiff, there was no indication that the online statements

12  contained anything different from the ones that were mailed to her.  In light of these

13  facts, the purposes underlying the statute, the DLSE's interpretation of it, Saks's

14  failure to address the DLSE letter and its limitations on electronic statements, and

15  the unsettled state of the law, the court concludes that Saks is not entitled to

16  judgment as a matter of law on this issue.

17              **b.    "Knowing and Intentional"**

18  Section 226(e) defines "knowing and intentional" as follows:

19  For purposes of this subdivision, a "knowing and intentional failure"
    does not include an isolated and unintentional payroll error due to a
20  clerical or inadvertent mistake.  In reviewing for compliance with
    this section, the factfinder may consider as a relevant factor whether
21  the employer, prior to an alleged violation, has adopted and is in
    compliance with a set of policies, procedures, and practices that fully
22  comply with this section.

23  Cal. Lab. Code § 226(e)(3).

24  Few cases have applied the "knowing and intentional" standard in the

25  context of this statute.  The most comprehensive treatment appears to be in Willner

26  v. Manpower Inc., 35 F. Supp. 3d 1116 (N.D. Cal. 2014).  The court in Willner

27  ─────────────────

28  [3] "[W]e are not precluded from considering unpublished state court
    opinions." Nunez v. City of San Diego, 114 F.3d 935, 942 n.4 (9th Cir. 1997).

11

1   identified three principles from the language of the statute:  first, "knowing and

2   intentional" requires something more than a violation of § 226(a) alone; second, a

3   "knowing and intentional" failure must be more than an "isolated and unintentional

4   payroll error due to a clerical or inadvertent mistake"; and third, whether a violation

5   of § 226(a) was "knowing and intentional" is a factual determination.  Id. at

6   1130–31.  Based on those conclusions and California courts' definition of the

7   similar phrase "willingly and knowingly," which appears in other sections of

8   the California Labor Code, the court concluded that "a 'knowing and intentional'

9   violation requires a showing that the defendant knew that facts existed that brought

10  its actions or omissions within the provisions of section 226(a)."  Id. at 1131.

11         Plaintiff contends that Saks knowingly and intentionally violated § 226(a)

12  under this definition because Saks affirmatively mailed multiple defective wage

13  statements to her; it stipulated that the statements did not comply with § 226(a)(6);

14  it admitted during discovery that it mailed defective statements to class members

15  between July 14, 2013, and June 27, 2014; and it admitted that its internal payroll

16  department created and mailed the paychecks.  (Doc. No. 19-1 at 13–14.)

17         Saks does not take issue with Plaintiff's evidence or the analysis in Willner.

18  Rather, it argues that the omission of the beginning dates from the pay stubs was

19  not a "willful and intentional violation of Labor Code § 226" because the electronic

20  wage statements included the pay-period beginning dates.  (Doc. No. 15-1 at 10.)

21         Saks's argument is unsupported and misses the mark.  Under the standard

22  persuasively articulated in Willner, the employee must show only that the employer

23  "knew that its wage statements did not contain the inclusive dates of the period for

24  which its employees were paid."  35 F. Supp. 3d at 1131.  Whether the employer

25  knew it was violating § 226(a) is irrelevant.  See id.; accord Perez v. Safety-Kleen

26  Sys., Inc., 2007 WL 1848037, at *9 (N.D. Cal. June 27, 2007) (ignorance of the law

27  / / /

28  / / /

1  does not excuse a violation of § 226).[4]

2       Saks asserts in its reply brief that it had systems in place such that pay-period

3  beginning dates would be on its wage statements, as evidenced by the electronic

4  wage statements, and that Plaintiff has presented no evidence that the lack of the

5  dates on her pay stubs was anything more than a clerical oversight.  (Doc. No. 20

6  at 8.)

7       However, arguments raised for the first time in a reply brief are improper,

8  and the court need not consider them.  See Zamani v. Carnes, 491 F.3d 990, 997

9  (9th Cir. 2007).  Considering such arguments "would unfairly deny the non-moving

10  party an opportunity to respond."  Rosales v. FitFlop USA, LLC, 882 F. Supp. 2d

11  1168, 1176 (S.D. Cal. 2012).

12       Regardless, Saks admitted that its internal payroll department created the

13  defective pay stubs and mailed them to every employee who received a hard-copy

14  paycheck for almost a year.  This is sufficient to create a genuine dispute regarding

15  whether this element is satisfied.  This is not, therefore, an issue that can be resolved

16  by summary judgment.

17                    **c.    Resulting Injury**

18       Effective January 2013, the California legislature amended § 226(a) to clarify

19  the injury requirement under § 226(e).  The amended version reads in relevant part:

20       An employee is deemed to suffer injury for purposes of this
       subdivision if the employer fails to provide accurate and complete
21       information as required by any one or more of items (1) to (9),
       inclusive, of subdivision (a) and *the employee cannot promptly and*
22       *easily determine from the wage statement alone* one or more of the
       following:  . . . any of the . . . information required to be provided
23       on the itemized wage statement pursuant to items (2) to (4), inclusive,
       (6), and (9) of subdivision (a).

24

25

26       [4]  The scienter requirement for a § 226 violation, that it be "knowing
   and intentional," suggests that an employer must not only have knowledge of the
   omitted information, but that the employer *intended* that to be the case.  Although
27   Willner does not address whether the term "intentional" adds anything to
   "knowing," this court agrees with the analysis in Willner as far as it goes.
28

1    For purposes of this paragraph, "promptly and easily determine" means
2    a reasonable person would be able to readily ascertain the information
     *without reference to other documents or information*.

3    Cal. Lab. Code § 226(e)(2)(B)(i) and (e)(2)(C) (emphasis added).  Thus, the injury

4    requirement is met if the employee must refer to "other documents or information"

5    beyond the four corners of each wage statement to determine the inclusive dates of

6    the pay period.

7          Plaintiff asserts that she suffered an injury within the meaning of the statute

8    because she "cannot determine the beginning pay period dates by examining her

9    hard copy wage statements alone."  (Doc. 19 at 11.)

10         Saks essentially concedes that Plaintiff would need to refer to outside

11   information to determine the relevant dates, as it argues that she did not suffer an

12   injury because she could determine the pay period by counting back seven days

13   from the end date on her pay stubs, since she "knew that she was paid on a weekly

14   basis based on her own receipt of her paychecks as well as information provided to

15   her by Saks during orientation and her employee handbook."  (Doc. No. 15-1 at 9.)

16         Saks relies on two cases that rejected § 226(a) claims because the only injury

17   alleged was the need to perform "simple math" to determine the accuracy of the

18   paycheck.  See Price v. Starbucks Corp., 192 Cal. App. 4th 1136, 1142–44 (2011);

19   Alonzo v. Maximus, Inc., 832 F. Supp. 2d 1122, 1135–36 (C.D. Cal. 2011).  As

20   Plaintiff points out, however, these cases predate the 2013 amendments.

21         Based on the court's review of the individual stubs, there is no way to

22   determine the pay-period start date.  Plaintiff has, thus, presented evidence of an

23   injury within the meaning of the statute, and Saks has not shown that it is entitled

24   to judgment on this issue.

25   **3.    PAGA Claim**

26         Plaintiff's second cause of action, for penalties under the Private Attorneys

27   General Act ("PAGA"), California Labor Code § 2699, is derivative of her claim

28   for inadequate wage statements under California Labor Code § 226(a).

14

1        Saks asserts that it is entitled to judgment on this claim because Plaintiff's

2    § 226(a) claim fails.  (Doc. No. 15-1 at 10–11.)  However, as discussed above,

3    Plaintiff has presented a triable § 226(a) claim.

4    **CONCLUSION**

5        Saks's motion for summary judgment, (Doc. No. 15), and its related request

6    for judicial notice, (Doc. No. 15-3), are DENIED.

7        IT IS SO ORDERED.

8    DATED:  March 26, 2015

9    _____

10   Hon. Jeffrey T. Miller
     United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28